UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                      :
ANNETTE VOGELFANG,                                    :
                                                      :
                              Plaintiff,              :          10 Civ. 3827 (PAE)
                -v-                                    :
                                                      :          OPINION & ORDER
DEPUTY SUPERINTENDENT CAPRA, et al.,                  :
                                                      :
                              Defendants.             :
                                                      :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        Defendants Ernest Maddox, Donald Selsky, Norman Bezio, Nurse Tracy Jewell, C.O.

Shavo, C.O. Nunez, C.O. Butler, C.O. Simmons, C.O. Bottone, C.O. Derry, C.O. McCants, Mary

Hayo, Brian Fischer, Captain Fitzgerald, Superintendent Perez, Thomas Eagan, Karen Bellamy,

Deputy Superintendent for Security Capra, C.O. Tardibono and C.O. Holmes (collectively,

"defendants") move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the

complaint of *pro se* plaintiff Annette Vogelfang ("Vogelfang"), who asserts 25 claims under 42

U.S.C. § 1983 contesting the conditions of her confinement and challenging the conduct of

numerous correction officers at Bedford Hills Correctional Facility.  For the following reasons,

defendants' motion is granted as to all but three of Vogelfang's claims.

I.   **Background**[1]

On May 10, 2010, Vogelfang, proceeding *pro se* and presently incarcerated at Bedford Hills Correctional Facility under the supervision of the New York State Department of Corrections, filed a Complaint in this Court.  That Complaint consists of 10 documents, all written or sworn to in or about March 2010.  Because those documents make disparate allegations and are not readily synthesized into a single narrative, the Court summarizes Vogelfang's allegations by the document they are contained in.

In the first two documents, a form complaint and accompanying affidavit dated March 16, 2010, Vogelfang alleges that while imprisoned at Bedford Hills, she has been subjected to cruel and inhumane punishment, in part by being placed in the Special Housing Unit ("SHU") for round-the-clock confinement.  Vogelfang asserts that she was placed in the SHU as a result of false and malicious misbehavior reports that defendants filed against her.  Vogelfang also claims that "all staff" at Bedford Hills have used force against her in retaliation for her complaint that she was sexually assaulted by an unnamed correction officer.

In the third document, Vogelfang alleges that her due process rights, and internal Department of Corrections protocols, have been violated because Bedford Hills does not provide electronic recordings of disciplinary proceedings to inmates until after the time to appeal a disciplinary determination has elapsed.  Vogelfang alleges that defendants McCants and Capra are responsible for overseeing this program.

---

[1] The Court's account of the underlying facts of this case is drawn from Vogelfang's "complaint" which is comprised of 10 documents generated in or about March 2010.  Because these documents are not uniformly formatted or consecutively paginated, citation to particular passages is difficult and will likely be of little help to the reader; therefore, no specific citation to these sources will be made.  In the context of a motion to dismiss pursuant to Rule 12(b)(6), the Court assumes the truth of all properly-pled allegations in the complaint and draws all reasonable inferences in favor of the non-movant.

In the fourth document, Vogelfang claims that her due process rights were violated when a disciplinary proceeding was not electronically recorded, and when a disciplinary proceeding was not commenced within seven days of her release from the Mental Health Unit. Vogelfang alleges that the proceeding did not occur until 25 days after the incident. She asserts that an extension of time, granted to prison officials, to serve a disciplinary ticket on her violated her constitutional rights.

In the fifth document, Vogelfang makes an array of complaints about the conditions of her confinement. These include that: (1) she has been denied heat and food on some occasions; (2) she has been found guilty at disciplinary hearings initiated by unsubstantiated and false misbehavior reports; (3) she has been denied the right to practice her religion, in violation of the First Amendment; (4) she has been denied court-ordered visits with her son; (5) that she has been denied telephone privileges; (6) she has been denied the right to petition the government for redress of grievances, in violation of the First Amendment; (7) defendants Bellamy and Eagan routinely deny grievance appeals and uphold determinations by the prison superintendent; (8) defendants Selsky and Bezio routinely affirm unjust and improper disciplinary hearings despite the lack of evidence of wrongdoing; (9) defendant Fitzgerald routinely classifies all of Vogelfang's misbehavior reports as Tier III infractions; (10) she has been denied the use of a computer; (11) her legal documents have been improperly downloaded by prison personnel outside of her presence; (13) defendant Fischer has been put on notice of these alleged deprivations yet has done nothing; (14) she has been denied her hour of exercise in the yard; (15) defendant Jewell, a nurse, has been deliberately indifferent to Vogelfang's serious medical needs; and (16) defendant Superintendent Williams has ignored Vogelfang's letters airing these grievances.

In the sixth document, Vogelfang makes several complaints about two Inmate Misbehavior Reports ("IMRs") filed against her, the process arising out of those IMRs, and other unrelated interactions with correction officers.  First, she claims that defendant Derry denied her an hour of exercise and "performed a degrading sexual act" in front of her.  Vogelfang alleges that she filed a grievance against Derry for these transgressions and that, in retaliation, Derry filed a false IMR against her, which resulted in her spending three months in the SHU.  Second, Vogelfang claims that defendant Butler denied her recreation time and filed a false IMR against her.  In connection with these two false IMRs, Vogelfang contends that her due process rights were violated because the outcomes of the disciplinary hearings were pre-determined and defendant Hayo did not allow her to call witnesses in her defense and conducted a "cruel and ridiculous" hearing on the IMRs.  Third, Vogelfang alleges that defendant Holmes harassed her by pat-frisking her when only female correction officers are permitted to do so.  Additionally, Vogelfang contends that, on March 2, 2010, defendant Tardibono pushed her into concrete when attempting to intervene in an episode of prisoner non-compliance.  Vogelfang also claims that Tardibono dragged her by the handcuffs into a corner, where Tardibono and defendant Shavo slammed her into a metal chair and pulled painfully on her shackles.  Finally, Vogelfang claims that non-defendant C.O. Reese tightened her handcuffs unnecessarily on a trip out of the prison for medical treatment.

The seventh document, functionally an extension of the sixth, elaborates on the March 2, 2010 incident involving defendants Tardibono and Shavo.  On that date, Vogelfang appeared before defendant Hayo for the disciplinary proceeding described in document six.  Plaintiff asserts that, because the outcome of the proceeding was pre-determined, she got up to leave the hearing before it concluded but was grabbed and detained by defendant Velez.  Vogelfang

[4]

further alleges that Velez called to Tardibono and Shavo for assistance, whereupon they dragged her into a corner and slammed her into a chair as described above.

The eighth document was construed by the Honorable John G. Koeltl, United States District Judge, to whom this case was previously assigned, as a motion for a preliminary injunction. That motion was denied on October 4, 2010. *See* Dkt. 28.

The ninth document complains generally of Bedford Hills' treatment of Vogelfang, specifically the allegedly-excessive time she has been placed in the SHU. Vogelfang asserts that she made an idle threat against another inmate, and that this transgression caused her to be put in the SHU for approximately six months, although previous similar behavior had not produced such a response.

The tenth and final document is in narrative form and contains a large number of allegations. First, Vogelfang alleges that at a January 8, 2008 disciplinary hearing initiated by defendant Bottone, she was deprived of due process by, *inter alia*, not being served with the IMR until under 24 hours before the hearing, not being allowed to ask all questions she wanted of a witness, and being removed from the hearing. Vogelfang further complains that defendant Maddox, the hearing officer at the proceeding, questioned witnesses outside of her presence. As a result of these deficiencies, Vogelfang claims, she was assigned to the SHU for approximately six months and lost approximately three months of good-time credit. Second, Vogelfang further asserts that this course of events was a form of retaliation for her claim of sexual assault against a correction officer. Third, Vogelfang contends that defendant Nunez has harassed her for years by, *inter alia*, destroying her legal documents, hitting, pushing, pulling, and kicking her. She further claims that defendants Nunez and Bottone have conspired to deny her breakfast in the morning—which, she claims, is a necessary accompaniment to her prescription medication—and

have written false IMRs and denied her recreation time.  Fourth, Vogelfang asserts that she was

denied access to the law library by a non-defendant correction officer, who also wrote false

IMRs against her.[2]  Fifth, Vogelfang claims that at a March 14, 2008 disciplinary hearing

conducted by defendant Maddox, she requested the ability to use an assistant but that request was

denied; that Maddox ordered Vogelfang removed for non-compliance; and that a non-defendant

officer then dragged Vogelfang 300 feet in handcuffs, after which she requested, but was

refused, medical treatment.  While Vogelfang was not present, the hearing allegedly went on

without her, and she was given 60 days "keeplock" confinement as a result.  Fifth, Vogelfang

alleges that, on or about March 21, 2008, defendant Nunez hit her in her back and shoulders, and

that she was again denied medical treatment.  Sixth, Vogelfang claims that defendant Bottone

harassed her, causing her to be given another 60-day term in the SHU.  Seventh, Vogelfang

asserts that defendant Bottone came to her cell with another officer and wrote another false IMR

resulting in another 60-day period in the SHU.  Eighth, she reiterates her argument that the

defendants' course of conduct is in retaliation for her allegation that a correction officer sexually

assaulted her.  Ninth, she claims that defendant Simmons tormented her by filing numerous

IMRs and conducting an illegal cell search, at the end of which Simmons took pens belonging to

her.  Tenth, and finally, Vogelfang alleges that she had been without heat for a period of time,

and that on December 4, 2008, there was no hot water for her to take a shower.

     Taking all documents together, Vogelfang's claims asserted in the complaint can be

summarized as follows:

---

[2] Because the alleged perpetrator of this act is not a party to this case and has not been served
with process, the Court will not address this allegation further.

| | Claim | Defendant(s) Responsible |
|---|---|---|
| 1 | General complaint of excessive force/cruel and unusual punishment in retaliation for her sexual assault complaint against a correction officer | All staff of Bedford Hills (none specifically identified) |
| 2 | Failure to record disciplinary hearings pursuant to Department of Corrections protocol | Defendant McCants, Defendant Capra (as administrators of the program), Defendant Perez (as Superintendent) |
| 3 | Failure to conduct a disciplinary proceeding within seven days | "Albany" (none specifically identified) |
| 4 | Denial of heat/hot water | None identified |
| 5 | Failure to produce evidence of disciplinary infractions because those infractions never occurred | None identified |
| 6 | Denial of right to practice religion | None identified |
| 7 | Denial of visitation with children | None identified |
| 8 | Denial of telephone privileges | None identified |
| 9 | Denial of right to petition the government for redress of grievances | None identified |
| 10 | Erroneous and summary affirmance of grievance appeals in disregard of law | Defendant Bellamy, Defendant Eagan |
| 11 | Conducting improper hearings and making determinations unsupported by evidence | Defendant Selsky, Defendant Bezio |
| 12 | Uniform categorization of infractions as Tier III | Defendant Fitzgerald |
| 13 | Denial of the use of a computer | Defendant Superintendent Perez |
| 14 | Downloading of her legal work outside of her presence | None identified |
| 15 | Failure to correct unconstitutional conditions | Defendant Fischer, Defendant Williams |
| 16 | Denial of hour of exercise in yard | Defendant Derry, Defendant Butler, Defendant Fitzgerald |
| 17 | Deliberate indifference to serious medical need | Defendant Jewell, Defendant Nunez |
| 18 | Filing of false IMRs | Defendant Derry, Defendant Butler, Defendant Bottone, Defendant Simmons, Defendant Nunez |
| 19 | Improper pat-frisk by opposite-sex correction officer | Defendant Holmes |
| 20 | General harassment/sexual harassment | Defendant Nunez, Defendant Bottone, Defendant Derry |
| 21 | Illegal cell search | Defendant Simmons |
| 22 | Denial of food | Defendant Nunez, Defendant Bottone |
| 23 | Denial of due process in disciplinary proceedings (*e.g.*, removing plaintiff from hearing, restricting ability to call witnesses) | Defendant Hayo, Defendant Maddox |

| 24 | Cruel and unusual punishment | Defendant Tardibono, Defendant Shavo, Defendant Velez, Defendant Nunez |
| 25 | Retaliation | Defendant Tardibono, Defendant Shavo, Defendant Velez, Defendant Nunez, Defendant Fitzgerald, Defendant Derry, Defendant Bottone, Defendant Simmons |

On August 8, 2011, defendants filed a motion to dismiss.  In early January 2012, after a number of justifiable delays, Vogelfang's opposition was submitted.[3]  On January 13, 2012, defendants filed a reply.

In support of their motion, defendants argue that Vogelfang has failed: (1) to allege the personal involvement of each defendant as required by 42 U.S.C. § 1983; (2) to demonstrate a liberty interest that would require more process than she received in her disciplinary proceedings; (3) to plausibly state a claim for deliberate indifference to a serious medical need; and (4) to plausibly state a claim for retaliation; and that (5) Vogelfang's claim regarding the loss of good-time credits must be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994).

## II.  Discussion

### A.    Applicable Legal Standards

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Despite the well-established rule in this circuit that *pro se* submissions are to be liberally construed and interpreted to raise "the strongest arguments they suggest," *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006), the

---

[3] In the interim, in November 2011, Vogelfang submitted a document entitled a "Motion for an Emergency Order of Protection."  Because her submission named officers who are not parties to this action and have not been served with process, that motion was denied by Order dated December 21, 2011.  *See* Dkt. 68.

plausibility standard applies equally to *pro se* complaints. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *Okoh v. Sullivan*, No. 11-1303-cv, 2011 U.S. App. LEXIS 25117, at *2–3 (2d Cir. Dec. 19, 2011) (summ. order).

To state a claim for relief that is facially plausible, an allegation must be "more than an unadorned, the-defendant-unlawfully-harmed me accusation"; a claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Accordingly, where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In making that determination, the Court must accept as true all well-pleaded factual allegations in the complaint, and "draw[ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotation marks and citation omitted). On the other hand, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949; *see also Twombly*, 550 U.S. at 555 (noting that a court is "'not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**B.    Section 1983**

Vogelfang's submissions clearly denote an intent to bring claims pursuant to 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.

1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).  "To state a claim under

Section 1983, a plaintiff must allege facts indicating that some official action has caused the

plaintiff to be deprived of his or her constitutional rights."  *Zherka v. Amicone*, 634 F.3d 642,

644 (2d Cir. 2011) (citing *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002) (per

curiam)); *see also Ross v. Westchester Cnty. Jail*, No. 10-cv-3937, 2012 U.S. Dist. LEXIS 3502,

at *26 (S.D.N.Y. Jan. 11, 2012).  A defendant's conduct must therefore be a proximate cause of

the claimed violation in order to find that the individual defendant deprived the plaintiff of his

rights.  *Ross*, 2012 U.S. Dist. LEXIS 3502, at *26 (citing *Martinez v. California*, 444 U.S. 277,

285 (1980)).  Additionally, where, as here, a plaintiff is seeking money damages against the

defendants, the "personal involvement of defendants in alleged constitutional deprivations is a

prerequisite" to recovery under § 1983.  *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (citing

*Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).  Because Vogelfang has, as a threshold

matter, failed to sufficiently allege the personal involvement of a defendant with respect to a

number of her claims, the Court will address that issue first.

### 1.    Lack of Allegation of Personal Involvement

As detailed in the chart above, Vogelfang has failed to allege the personal involvement of

any individual, let alone a defendant in this action, as to the first,[4] third,[5] fourth, fifth, sixth,

---

[4] Vogelfang's first claim—a generalized complaint that she has been mistreated in retaliation for
lodging a sexual assault complaint against a correction officer—is dismissed for failure to name
any individual perpetrator.  To the extent that this complaint is reiterated in claim 25 with respect
to particular acts by specific officers, it meets the threshold requirement of personal involvement
and is considered separately.

[5] Vogelfang alleges that "Albany" wrongly granted extensions of time, beyond the seven-day
period within which disciplinary hearings must be held.  *See* 7 N.Y.C.R.R. § 251-5.1(a).  Even if
the Court construed the identification of "Albany" as sufficiently specific to allege the personal
involvement of a particular official—which it does not—absent pre-emptive confinement in
keeplock or the SHU pending a hearing, "[d]ue process for an inmate disciplinary hearing does

seventh, eighth, ninth, and 14th of her claims.  Accordingly, she cannot prevail on those claims

and they must be dismissed.  Where Vogelfang *has* alleged the personal involvement of certain

defendants, the allegations against some of those defendants fail, as a matter of law, to

sufficiently implicate them in an alleged constitutional violation, and therefore the claims against

those defendants must be dismissed as well.

Vogelfang has named defendants Fischer, Williams, McCants, Capra, Perez, Selsky,

Bezio, Eagan, and Bellamy as defendants solely by virtue of their supervisory positions in either

the chain of command or the administrative review system for inmate disciplinary proceedings.

In *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), the Second Circuit held that personal

involvement by a supervisor under § 1983 may be found where the supervisor (1) participated

directly in the alleged constitutional violation, (2) failed to remedy a wrong after learning of the

violation through a report or appeal, (3) created a policy or custom under which unconstitutional

practices occurred, or allowed such a policy or custom to continue, (4) was grossly negligent in

supervising the subordinates who caused the unlawful condition or event, or (5) demonstrated

deliberate indifference to the constitutional rights of inmates by failing to act on information

indicating that unconstitutional practices are taking place.  *Id.* at 873; *see also Bridgewater v.

Taylor*, No. 08-cv-3593, 2011 U.S. Dist. LEXIS 148323, at *24 (S.D.N.Y. Dec. 21, 2011).

The Second Circuit has not squarely addressed the question of whether all of these

categories of supervisory liability identified in *Colon* have survived the Supreme Court's

---

not encompass a right to a speedy hearing.  The Second Circuit has held that the lack of a speedy
hearing alone would not be enough generally to establish a constitutional claim."  *Barnes v.
Henderson*, 628 F. Supp. 2d 407, 411 (W.D.N.Y. 2009) (citing *Soto v. Walker*, 44 F.3d 169, 173
(2d Cir. 1995)).  Here, Vogelfang alleges that disciplinary tickets for incidents which occurred
on February 5, 2010 and February 16, 2010 were subject to delays of 25 days and 16 days,
respectively, before a hearing was conducted.  She does not, however, state that she was placed
in keeplock or the SHU awaiting a hearing.  Thus, even assuming personal involvement had been
adequately pled, she does not plausibly state a due process claim.

decision in *Iqbal*, in which the Court held that "[b]ecause vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948.  In so holding, the Court explicitly rejected the argument that, "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Id.* at 1949.  Thus, the Court concluded that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

District courts in this circuit have observed that the language of *Iqbal* would appear to foreclose the second, fourth, fifth, and part of the third avenues to liability outlined in *Colon*, but have expressed differeing views on which of these five avenues to supervisory liability remain open to plaintiffs.  *See, e.g.*, *Bridgewater*, 2011 U.S. Dist. LEXIS 148323, at *24 n.8 (assuming, that all five avenues remain open); *Rahman v. Fischer*, No. 08-cv-4368, 2010 U.S. Dist. LEXIS 27155, at *11–13 (S.D.N.Y. Mar. 22, 2010) (same); *but see Spear v. Hugles*, No. 08-cv-4026, 2009 U.S. Dist. LEXIS 62055, at *7 (S.D.N.Y. July 20, 2009) (holding that only the first and part of the third *Colon* avenues survived *Iqbal*); *Bellamy v. Mount Vernon Hosp.*, No. 07-cv-1801, 2009 U.S. Dist. LEXIS 54141, at *20–21 (S.D.N.Y. June 26, 2009) (same).  This Court, however, need not weigh in on this point, because Vogelfang's allegations with respect to supervisory liability are insufficient to establish liability under any of the five *Colon* avenues.

### a)    Defendants Fischer and Williams

As for defendants Fischer, the commissioner of the Department of Corrections, and Williams, a Superintendent, they are alleged only to have received a letter from Vogelfang and failed to respond.  However, "mere receipt of a letter from an inmate, without more, does not constitute personal involvement for the purposes of section 1983 liability." *Andino v. Fischer*,

698 F. Supp. 2d 362, 385 (S.D.N.Y. 2010) (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)).  To the extent Vogelfang may argue that Fischer or Williams failed to properly supervise subordinates who were violating her rights, "the mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under § 1983."  *Styles v. Goord*, 431 F. App'x 31, 33 (2d Cir. 2011) (summ. order); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("mere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim.")  Vogelfang has pled no facts, beyond Fischer's and Williams's presumed receipt of a letter and their respective positions atop the Department of Corrections, implicating them in any violation described in her complaint.  Vogelfang has therefore failed to plausibly plead Fischer's or Williams's personal involvement in any infringement of her constitutional rights.

   **b)**   **Defendants Capra and McCants**

  As for defendants Capra and McCants, Vogelfang alleges that they administer a program of disciplinary proceedings whereby inmates are not provided with electronic recordings of the hearings until after the time for the inmate to appeal a determination has run.  However, although New York state law "requires that an electronic record of a disciplinary hearing be maintained, such a record is not constitutionally required."  *Dixon v. Goord*, 224 F. Supp. 2d. 739, 744 (S.D.N.Y. 2002); *see also Delgado v. Bezio*, No. 09-cv-6899, 2011 U.S. Dist. LEXIS 51917, at *18 (S.D.N.Y. May 9, 2011) ("It is well established that an inmate does not have a constitutional due process right to receive a transcript of his disciplinary hearing."); *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("Violations of state law procedural requirements do not alone constitute a deprivation of due process since federal constitutional standards rather than state law define the requirements of procedural due process.").  Thus, even if Capra and McCants were

personally involved in administering the program such that liability could attach, the failure to timely deliver transcripts is not a constitutional violation, and Vogelfang's claims against these defendants must be dismissed.

### c)    Defendant Perez

Vogelfang's claim against defendant Perez fails for similar reasons. Her claim against defendant Superintendent Perez—based solely on the allegation that she informed Perez that a disciplinary proceeding tape was blank—fails because, as noted, Vogelfang does not have a constitutional right to a contemporaneous recording of her disciplinary proceedings. To the extent that Perez was to *review* a determination made during a hearing with a blank tape, because there is no due process right to have a disciplinary proceeding contemporaneously recorded in the first instance, there is, *a fortiori*, "no due process right to having a disciplinary ruling reviewed with the aid of a perfect audio recording or complete transcript." *Johnson v. Goord*, 487 F. Supp. 2d 377, 386 (S.D.N.Y. 2007), *aff'd*, 305 F. App'x. 815 (2d Cir. Jan. 9, 2009) (summ. order). Accordingly, Vogelfang has failed to allege Perez's involvement in any event which constituted a violation of her rights. The claim against Perez must, therefore, be dismissed.

### d)    Defendants Selsky, Bezio, Eagan and Bellamy

As for defendants Selsky, Bezio, Eagan, and Bellamy, Vogelfang claims that they have summarily affirmed disciplinary decisions that are unjust and improper, by affirming proceedings whose tape recordings are blank. Vogelfang's allegation thus primarily asserts wrongdoing by Selsky, Bezio, Eagan and Bellamy insofar as they compounded the alleged underlying defect of failing to record the initial disciplinary proceeding. However, as noted, it is not a constitutional violation to fail to contemporaneously record a disciplinary proceeding, or to

[14]

review such an administrative determination without the benefit of such a recording.  The
conduct alleged by Vogelfang thus does not implicate her constitutional rights, and Selsky,
Bezio, Eagan, and Bellamy cannot have been involved in violating those rights.

Furthermore, courts in this circuit have held—in the analogous situation of grievance
hearings initiated by inmates, rather than disciplinary hearings initiated by officers—that an
officer tasked only with reviewing an administrative determination is not "personally involved"
even if the underlying determination implicates a plaintiff's constitutional rights.  *See Odom v.
Calero*, No. 06-cv-15527, 2008 U.S. Dist. LEXIS 52408, at *18 (S.D.N.Y. July 10, 2008)
("affirming the administrative denial of a prison inmate's grievance by a high-level official is
insufficient to establish personal involvement under section 1983") (citing *Manley v. Mazzuca*,
No. 01-cv-5178, 2007 U.S. Dist. LEXIS 4379, at *33 (S.D.N.Y. Jan. 19, 2007)).  As such, even
if Vogelfang had been deprived of her rights by the failure to contemporaneously record
disciplinary hearings, Selsky, Bezio, Eagan, and Bellamy would not, as a matter of law, have
been "personally involved" in that denial by sitting in administrative review of any decision
rendered at the hearing.

In sum, Vogelfang has failed to make a threshold showing of personal involvement as to
her first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, 10th, 11th, 13th, 14th, and 15th
claims, which must all be dismissed.

### 2.    Categorization of Infractions as Tier III

Vogelfang further asserts, in claim 12, that defendant Fitzgerald issues IMRs to her only
at the level of Tier III, presumably subjecting her to unwarranted prison discipline.  A prisoner's
liberty interest is implicated by prison discipline, however, only if that discipline "'imposes [an]
atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

life.'"  *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  Here, Vogelfang has not supplied any facts describing what, if any, punishment she received as a result of Fitzgerald's allegedly-excessive Tier III IMRs or, more to the point, how much incremental additional punishment she received as a result of the Tier III IMRs than she would have received had the IMRs been "properly" categorized.  Accordingly, Vogelfang has not plausibly pled that the hardship she suffered as a result of the allegedly-erroneous Tier III classifications, if any, was atypical or significant.  She therefore has not stated a due process claim premised on those classifications.

### 3.     Denial of Access to a Computer

Plaintiff also alleges that defendant Perez denied her computer privileges, despite the fact that she took the requisite tests to show computer proficiency and was not found to have misused any computer.  This species of prison discipline, like the categorization of IMRs as Tier III, implicates a prisoner's liberty interest only if it imposes an atypical or significant hardship on the inmate.  *Palmer*, 364 F.3d at 64.  Vogelfang claims that the denial of computer privileges made it impossible for her to perform her legal work, because courts no longer accept hand-written documents.  That is not the case.  Indeed, Vogelfang has submitted, and the Court has accepted, numerous handwritten documents in this litigation alone.  Stripped of the incorrect assertion that the lack of a computer precludes her from making court filings, Vogelfang's complaint about the denial of computer privileges fails to allege an "atypical and significant hardship" relative to "the ordinary incidents of prison life."  *Id*.  Thus, Vogelfang has not adequately pled that these circumstances constitute a due process violation.

[16]

### 4.   Denial of Exercise in the Yard

Vogelfang also asserts that defendants Derry, Butler, and Fitzgerald have denied her the privilege of exercising in the yard.  This is best read as a claim of cruel and unusual punishment under the Eighth and Fourteenth Amendments.  In order to prove that a prison condition amounted to cruel and unusual punishment as prohibited by the Eighth Amendment, a plaintiff must satisfy both an objective and a subjective standard.  *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996).  To satisfy the objective test, a plaintiff must show that the conditions of confinement result "in unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities."  *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  "However, conditions that are 'restrictive and even harsh' are 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Anderson*, 757 F.2d at 35 (quoting *Rhodes*, 452 U.S. at 347).  To satisfy the subjective test, a plaintiff must demonstrate that the defendants were "deliberately indifferent" to plaintiff's health or safety.  *Jolly*, 76 F.3d at 480.

The Second Circuit recognizes that "some opportunity for exercise must be afforded to prisoners."  *Anderson*, 757 F.2d at 35; *see also Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir. 1996).  Thus, "a prisoner may satisfy the objective component of the Eighth Amendment test by showing that [s]he was denied meaningful exercise for a substantial period of time."  *Davidson v. Coughlin*, 968 F. Supp. 121, 129 (S.D.N.Y. 1997).  Here, however, because Vogelfang has not specified the time period in which she was deprived of exercise, there is no basis on which the Court could plausibly conclude that she was so deprived for "a substantial period of time," and Vogelfang therefore has not pled facts sufficient to satisfy the objective requirement of an Eighth Amendment claim.  *See Davidson*, 968 F. Supp. at 129; *Williams v. Goord*, 142 F. Supp. 2d 416,

425 (S.D.N.Y. 2001); *Gibson v. City of New York*, No. 96-cv-3409, 1998 U.S. Dist. LEXIS 3618, at *10 (S.D.N.Y. Mar. 25, 1998).  This claim must therefore be dismissed as well.

**5.      Deliberate Indifference to a Serious Medical Need**

Plaintiff has also alleged two instances of deliberate indifference to a serious medical need, a violation of the Eighth and Fourteenth Amendments.[6]  The first, involving defendant Jewell, is couched in wholly conclusory terms; Vogelfang does not identify even the medical need allegedly disregarded.  This claim is therefore dismissed for failure to comply with the pleading standard of *Iqbal*.  The second, involving defendant Nunez, arises out of an incident in which plaintiff claims that Nunez hit her on the back and shoulders, causing her to fall and aggravate a pre-existing back injury.  Vogelfang alleges that she was denied medical care after this episode.

The standard for deliberate indifference includes a subjective component and an objective component. *See Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) (per curiam). Subjectively, the official charged with deliberate indifference must act with a "sufficiently culpable state of mind."  *See Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991).  That is, the official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The objective component requires that "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or

---

[6] Vogelfang also asserts that she was denied medical treatment after she was removed from a disciplinary proceeding by a C.O. Perez.  However, it is Superintendent Perez, and not C.O. Perez, who is a party to this action and has been served with process.  Vogelfang's allegations against C.O. Perez are therefore not cognizable.

extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted).

The circumstances which courts in this circuit have found to satisfy the objective seriousness requirement have generally entailed a needlessly prolonged period of extreme pain or the inexplicable failure to treat a life-threatening or life-altering illness. *See, e.g.*, *Hernandez v. Keane*, 341 F.3d 137, 141 (2d Cir. 2003) (bullet wound leaving shrapnel in plaintiff's hand which went untreated); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (dental condition which led to extreme pain for at least six months); *Hathaway v. Coughlin*, 37 F.3d 63, 65, 67 (2d Cir. 1994) (broken pins in an inmate's hip which caused persistent pain for a full year). Vogelfang's allegations do not meet this standard. Vogelfang does not allege that she requested any treatment for the alleged injuries after the initial incident, nor does she offer any allegation that any pain or discomfort lasted after the episode itself. In such circumstances, the Court cannot find that Vogelfang has plausibly alleged facts to meet the objective seriousness requirement for a claim of deliberate indifference under the Eighth and Fourteenth Amendments.

### 6.    Filing of False IMRs

Vogelfang also complains that defendants Derry, Butler, Bottone, Simmons, and Nunez have filed a number of false IMRs against her during her incarceration and have falsely substantiated the allegations in those IMRs in various disciplinary proceedings. However, "[t]he issuance of false misbehavior reports and provision of false testimony against an inmate by corrections officers is insufficient on its own to establish a denial of due process." *Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005) (summ. order) (citing *Boddie v. Schnieder*, 105

[19]

F.3d 857, 862 (2d Cir. 1997)).  Vogelfang therefore has not pled facts sufficient to support a due process violation premised on these allegations.[7]

### 7.    Improper Pat-Frisk

Plaintiff's nineteenth claim contends that defendant C.O. Holmes, a male, pushed her against a wall and pat-frisked her, improperly, because she is supposed to be pat-frisked only by female officers.  Because this claim, in essence, alleges an improper episode of physical contact with the plaintiff, it is best characterized as a claim of cruel and unusual punishment under the Eighth and Fourteenth Amendments.  To establish a claim of cruel and unusual punishment cognizable under the Eighth Amendment, a claimant must satisfy a two-part inquiry consisting of both objective and subjective elements.  *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (citing *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991)).  The objective element focuses on the harm done in light of "contemporary standards of decency," *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009), and asks whether "the deprivation alleged is 'sufficiently serious' or 'harmful enough' to reach constitutional dimensions." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (internal citations omitted).  "The Supreme Court has made clear, however, that [t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Tavares v. City of New York*, No. 08-cv-3782, 2011 U.S. Dist. LEXIS 137381, at *14–15 (S.D.N.Y. Oct. 17, 2011) (citing *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992)) (internal quotation marks and citations omitted).  Here,

---

[7] Where procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him, *Freeman v. Rideout*, 808 F.2d 949, 952 (2d Cir. 1986), or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of substantive constitutional rights, *Franco v. Kelly*, 854 F.2d 584, 588–89 (2d Cir. 1988), the filing of false IMRs may violate due process.  Vogelfang's allegations on these points are discussed *infra*.

Vogelfang alleges only that she was pushed against a wall to be pat-frisked, that contact between male correction officers and female inmates is, as a general matter, improper, and that she is supposed to be frisked only by female officers.  Although the Court must accept as true Vogelfang's allegation that Holmes pushed her up against a wall for the pat-frisk, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights," *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), nor will "every malevolent touch by a prison guard give[] rise to a federal cause of action." *Hudson*, 503 U.S. at 9.

Where, as here, a plaintiff alleges only a degree of roughness that is common in prison contexts, and has not claimed a lasting or even fleeting injury resulting from the defendant's conduct, courts in this circuit have routinely held that such conduct is insufficiently serious to support an Eighth Amendment claim.  *See, e.g.*, *Tavares*, 2011 U.S. Dist. LEXIS 137381, at *19–20; *Kalwasinski v. Artuz*, No. 02-cv-2582, 2003 U.S. Dist. LEXIS 22731 (S.D.N.Y. Dec. 18, 2003) (finding claim that guard used excessive force when he pressed inmate's face into the wall during a pat frisk after inmate had been arguing with him insufficient to survive summary judgment); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 471 (S.D.N.Y. 1998) ("although kicking an inmate's ankles and feet [during a pat frisk] cannot be condoned, this use of force is *de minimis* and insufficient to rise to the level of a constitutional violation"); *Show v. Patterson*, 955 F. Supp. 182, 192–93 (S.D.N.Y. 1997) (only *de minimis* force used where officer pushed inmate against wall).  And, although Vogelfang suggests that contact between prisoners and guards of opposite sexes is generally inappropriate, she offers no facts on which to premise an argument that the particular incident complained of had any indicia of improper sexual behavior.

[21]

Accordingly, Vogelfang has not alleged facts to make her claim of an Eighth Amendment violation based on the pat-frisk plausible on its face; it is therefore dismissed.

### 8.    General Harassment and Sexual Harassment

Vogelfang also alleges that she has been subject to harassment by defendants Nunez and Bottone, including verbally and by pushing, shoving, and kicking her.  Her generalized complaint that Nunez and Bottone have a habit of pushing, shoving, and kicking her—without any elaboration as to the circumstances surrounding the incidents or the pain or injury caused, if any—is not particularized enough to plausibly allege a "sufficiently serious" course of conduct. *Romano*, 998 F.2d at 105.  Additionally, Vogelfang has also failed to plausibly plead that the officers had the requisite subjective intent necessary to make out a claim under the Eighth Amendment.  To establish the subjective element of an Eighth Amendment claim, a plaintiff must show that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct."  *Wright*, 554 F.3d at 268 (quoting *Blyden*, 186 F.3d at 262) (internal quotation marks omitted)).  The wantonness inquiry turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Wright*, 554 F.3d at 268 (citing *Hudson*, 503 U.S. at 7).  Vogelfang has not pled any details about the circumstances surrounding the challenged conduct, and therefore has failed to plausibly plead that the defendants' actions were "characterized by wantonness" so as to rise to the level of a constitutional violation.  Her Eighth Amendment claims based on generalized complaints of physical harassment must therefore be dismissed as well.

As for Vogelfang's complaints of verbal abuse, "verbal harassment or profanity alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it

[22]

might seem, does not constitute the violation of any federally protected right and is therefore not actionable." *Aziz Zarif Shabazz*, 994 F. Supp. at 474; *see also Santiago v. Pressley*, No. 10-cv-4797, 2011 U.S. Dist. LEXIS 148079, at *16 (S.D.N.Y. Dec. 23, 2011); *Tavares*, 2011 U.S. Dist. LEXIS 137381, at *19–20; *Jones v. Harris*, 665 F. Supp. 2d 384, 396 (S.D.N.Y. 2009); *Brown v. Croce*, 967 F. Supp. 101, 104 (S.D.N.Y. 1997) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)) (holding that a claim that a prison guard called an inmate names did not allege any appreciable injury and was properly dismissed).

Vogelfang also alleges that defendant Derry performed a "degrading sexual act" in front of her.  Plaintiff's vague and conclusory submission provides no further description of this alleged misconduct, nor the context in which it, purportedly, occurred.  The Second Circuit has held that the "sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Boddie v. Schnieder*, 105 F.3d 857, 860–61 (2d Cir. 1997).  However, in this case, Vogelfang does not allege that she was assaulted, molested, or even touched by the defendant.  The Court has found no case in which a plaintiff had established an actionable claim of sexual harassment under *Boddie* without having physical contact with the alleged perpetrator; indeed, significant but episodic physical contact has often been held insufficient to make out an Eighth Amendment claim for sexual harassment.  *See, e.g.*, *Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations insufficient to make out Eighth Amendment claim where defendant asked plaintiff to have sex with her and to expose himself to her); *Johnson v. Enu*, No. 08-cv-158, 2011 U.S. Dist. LEXIS 86831, at *38–42 (N.D.N.Y. July 13, 2011) (defendant's contact with plaintiff's groin during frisk insufficient); *Irvis v. Seally*, No. 09-cv-543, 2010 U.S. Dist. LEXIS 141010, at *15–16 (N.D.N.Y. Feb. 4, 2011) (three episodes of improper touching at strip searches insufficient);

[23]

*Silvagnoli v. Fischer*, No. 07-cv-561, 2010 U.S. Dist. LEXIS 27125, at *41–43 (N.D.N.Y. Mar. 1, 2010) (episode of defendant rubbing plaintiff's shoulders and grabbing his groin insufficient); *Excell v. Fischer*, No. 08-cv-945, 2009 U.S. Dist. LEXIS 88334 (N.D.N.Y. Sep. 24, 2009) (claim that officer grabbed and squeezed plaintiff's genitals during strip search not an Eighth Amendment violation); *Davis v. Castleberry*, 364 F. Supp. 2d 319, 321 (W.D.N.Y. 2005) (allegation that correction officer grabbed inmate's genitals during pat frisk insufficient); *Morrison v. Cortright*, 397 F. Supp. 2d 424, 425 (W.D.N.Y. 2005) (allegations that a correction officer touched plaintiff's buttocks, and that another "rubbed up against plaintiff['s] buttocks with [the officer's] private part" during a strip search insufficiently serious to establish a constitutional claim); *Montero v. Crusie*, 153 F. Supp. 2d 368, 373, 375 (S.D.N.Y. 2001) (allegation that correction officer squeezed inmate's genitals during pat-frisks on several occasions does not show sufficiently serious deprivation to establish Eighth Amendment violation, particularly where inmate did not allege that he was physically injured by such conduct); *Fisher v. Goord*, 981 F. Supp. 140, 175 n.42 (W.D.N.Y. 1997) (declining to decide whether defendant's exposing himself to plaintiff and showing plaintiff nude pictures of himself constituted an Eighth Amendment violation).

Accordingly, because Vogelfang's pleading is simply too conclusory and unspecific to meet the required pleading standard, her allegation does not state a claim under the Eighth Amendment.  Vogelfang's claim alleging as much must be dismissed.

### 9.    **Illegal Cell Search and Seizure**

Vogelfang's twenty-first claim alleges that defendant Simmons unlawfully searched her cell, after which time some of her pens were missing.  However, "[i]t is well-settled that the prohibition against unreasonable searches and seizures does not apply to a prison cell."  *Hudson*

*v. Palmer*, 468 U.S. 517, 526 (1984); *see also Willis v. Artuz*, 301 F.3d 65, 67–69 (2d Cir. 2002);

*Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 239 (S.D.N.Y. 2005) (an inmate has no right to

be free from searches of any kind, including those alleged to be retaliatory).  Additionally,

Vogelfang may not sue under § 1983 for the loss of her pens, because the loss of a prisoner's

property "whether intentional or negligent—will not support a due process claim redressable

under § 1983 if 'adequate state post-deprivation remedies are available.'"  *Davis v. New York*,

311 F. App'x 397, 400 (2d Cir. 2009) (summ. order) (quoting *Hudson*, 468 U.S. at 533); *see also*

*Jones*, 665 F. Supp. 2d at 401.  And "New York in fact affords an adequate post-deprivation

remedy in the form of, *inter alia*, a Court of Claims action pursuant to N.Y. Comp. Codes R. &

Regs. tit. 7, § 1700.3(b)(4)."  *Davis*, 311 F. App'x at 400 (citing *Jackson v. Burke*, 256 F.3d 93,

96 (2d Cir. 2001)); *see also Love v. Coughlin*, 714 F.2d 207, 208–09 (2d Cir. 1983) (New York

post-deprivation remedies adequate to preclude prisoner's due process claim for lost of personal

property).  Vogelfang's claims of an illegal cell search and the unauthorized seizure of her pens

are therefore not cognizable in a § 1983 action, and must be dismissed.

### 10.   Denial of Food

Plaintiff's twenty-second claim alleges that defendants Nunez and Bottone have

conspired to deny her breakfast in the morning, which, she claims, is a necessary accompaniment

to prescription drugs she must take each day.  "The Eighth Amendment requires that prisoners be

provided with 'nutritionally adequate food that is prepared and served under conditions which do

not present an immediate danger to the health and well being of the inmates who consume it.'"

*Edwards v. Horn*, No. 10-cv-6194, 2012 U.S. Dist. LEXIS 18424, at *28 (S.D.N.Y. Feb. 14,

2012) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (per curiam)); *see also*

*O'Keefe v. Goord*, 77 F. App'x 42, 43 (2d Cir. 2003) (summ. order).

[25]

In this case, however, Vogelfang does not allege any deficiency in the substance of the food provided, only the timing of its provision.  And although Vogelfang alleges that the officers knew that she should have something in her stomach before taking her medication, she does not allege any fact which could lead the Court to find it plausible that the officers knew about, but disregarded, a risk of serious harm.  This is relevant, because "a prison official cannot be found liable for such an Eighth Amendment violation 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *O'Keefe*, 77 F. App'x at 43 (quoting *Phelps v. Kapnolas*, 308 F.3d 180, 185–86 (2d Cir. 2002)).  Here, Vogelfang has failed to allege that the officers knew that the failure to provide food with medication could create a risk of serious harm.  She has also alleged no facts whatsoever tending to show that the officers *actually drew that inference*.  As such, Vogelfang has not plausibly pled an Eighth Amendment violation based on the alleged failure to provide food with her morning medication.  This claim must be dismissed as well.

### 11.    Denial of Due Process in Disciplinary Proceedings

Throughout the various documents constituting her complaint, Vogelfang alleges that she was denied due process in a number of disciplinary proceedings which have led to periods of segregated confinement in keeplock or the SHU, as well as a loss of good-time credit.  The defects alleged in those proceedings include her removal from the proceedings, limitations placed on her ability to call witnesses, insufficient notice of a hearing, and the denial of a request to use an assistant.[8]  In moving to dismiss, the defendants argue (1) that Vogelfang had no

---

[8] Vogelfang also complains about alleged due process violations relating to (1) the failure to record disciplinary hearings or provide transcripts of hearings, and (2) the failure to hold those

relevant liberty interest in a number of the proceedings described in her complaint, and (2) that, where Vogelfang had a liberty interest, she received all the process which she was due.

a)        **Establishing a liberty interest**

"In evaluating due process claims, the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001) (citation and quotation marks omitted).  As noted, prisoners subject to disciplinary proceedings can show a liberty interest only where "an institution's disciplinary decision results in an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" *Luna v. Pico*, 356 F.3d 481, 487 n.3 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  In determining whether an inmate has endured atypical and significant hardship pursuant to a disciplinary proceeding, the Second Circuit instructs courts to consider both the duration and conditions of the confinement.  *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) ("[f]actors relevant to determining" whether inmate endured atypical hardship include "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement") (internal quotation marks and citation omitted).

The Second Circuit has not provided a bright-line rule as to what period of time in segregated confinement implicates a prisoner's constitutional rights, but the case law provides helpful guideposts.  Punitive confinement for 101 days or fewer, under typical punitive segregation conditions, "generally do[es] not constitute 'atypical' conditions of confinement." *Bunting v. Nagy*, 452 F. Supp. 2d 447, 456 (S.D.N.Y. 2006) (quoting *Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999)); *see also Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000).  By

hearings within the 7-day period prescribed by New York law.  Those circumstances do not constitute due process violations for the reasons discussed above in Section II.B.1 and note 4.

contrast, 305 days or more of confinement has been found to be atypical and a significant hardship. *Colon*, 215 F.3d at 231–32. However, even if an inmate is held in segregated confinement for fewer than 101 days, a violation of his or her liberty interest may be implicated if "the conditions were more severe than the normal [punitive segregation] conditions . . . or a more fully developed record showed that even relatively brief confinements under normal conditions were, in fact, atypical." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (quoting *Palmer*, 364 F.3d at 65); *see also Ortiz v. McBride*, 380 F.3d 649, 654–55 (2d Cir. 2004). Here, as to two of the disciplinary proceedings she challenges, Vogelfang has failed to demonstrate a liberty interest entitling her to due process.

The first, set out in the sixth document forming a portion of her complaint, implicates defendant Hayo. Vogelfang alleges that, as a result of the filing of false IMRs, she appeared before Hayo for a disciplinary hearing in which the result was pre-determined, and in which Hayo did not allow her to call witnesses. As a result of these defects, Vogelfang alleges that she was confined in the SHU for three months. This period of time, however, is insufficient as a matter of law to trigger due process protections, *see Bunting*, 452 F. Supp. 2d at 456; furthermore, because Vogelfang does not plead any other facts tending to show that her SHU confinement was uniquely harsh, a defect in the disciplinary proceeding before defendant Hayo cannot be the basis for a due process claim.

The second proceeding, described in the tenth document comprising Vogelfang's complaint, occurred on March 14, 2008 before defendant Maddox. Vogelfang alleges that, at this hearing, she was denied the use of an assistant and was removed from the hearing room before the proceeding had concluded. Vogelfang alleges that she was assigned to 60 days of keeplock confinement as a result of this proceeding. Absent additional particularized allegations

[28]

regarding the harshness of the confinement—which plaintiff does not adduce—such a penalty, under the case law, is insufficient to rise to the level of a due process violation. Thus, Vogelfang's due process claims based on these two disciplinary proceedings must be dismissed.

### b)   Due process protections in prison disciplinary proceedings

Vogelfang has, however, also asserted claims relating to disciplinary proceedings that resulted in sanctions sufficient to trigger due process protection.

Where a prisoner's liberty interest is implicated, "[b]ecause '[p]rison disciplinary proceedings are not part of a criminal prosecution, . . . the full panoply of rights due a defendant in such proceedings does not apply.'" *Williams v. Menifee*, 331 F. App'x 59, 60 (2d Cir. 2009) (summ. order) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)) (alterations in original). Instead, to comport with procedural due process requirements, an inmate charged with a violation in a disciplinary hearing need only be afforded: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his [or her] defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action." *Williams*, 331 F. App'x at 60 (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985)); *see also Schwartz v. Dennison*, 518 F. Supp. 2d 560, 572 (S.D.N.Y. 2007).

Here, Vogelfang alleges that she was deprived of due process at a January 11, 2008 hearing before defendant Maddox after which she was assessed six months of SHU confinement and the loss of three months of good-time credits[9] for throwing hot coffee at defendant Bottone.

---

[9] Vogelfang's submission indicates that she seeks reinstatement of the three months of good time credit she lost at this hearing. Defendants argue that reinstatement of good time credit cannot be granted under *Heck v. Humphrey*, 512 U.S. 477 (1994). The Court agrees. *See Peralta v.*

Vogelfang alleges that she was not given sufficient advance notice of the proceeding, that she was improperly removed from the hearing by defendant Maddox, in violation of 7 N.Y.C.R.R. § 253.6(b), and that Maddox interviewed witnesses outside of her presence after she was removed. Because Vogelfang has referenced and appended to her complaint the Hearing Disposition Sheet generated at this proceeding, the defendants have asked the Court to consider it in assessing the parties' arguments on the instant motion pursuant to Rule 12(b)(6). *See, e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998), *cert. denied*, 525 U.S. 1103 (1999).

### *(1)    Insufficient notice*

Vogelfang's first argument, that she was not given sufficient notice, is belied by the Hearing Disposition Sheet she has appended to her complaint. *See* Deft.s' Mem. in Supp. of Mot. to Dismiss, Ex. A (Dkt. 59) (the "HDS"). However, although the Court may properly consider the contents of a document in the context of a motion to dismiss, documentary evidence does not trump a plaintiff's contrary factual allegations. *See Roth*, 489 F.3d at 510–11 (explicitly rejecting the argument that "when documents contain statements that contradict the allegations in the complaint, the documents control and the court need not accept as true the allegations contained in the complaint"). Thus, even though the timeline of events set out in the HDS comports with the due process requirement that a prisoner receive 24 hours advance notice of a prisoner disciplinary hearing, *see Sira v. Morton*, 380 F.3d 57, 70 (2d Cir. 2004), Vogelfang's

---

*Vasquez*, 467 F.3d 98 (2d Cir. 2006) (holding that *Heck* bars a § 1983 plaintiff from pursuing a suit for money damages based on the process or outcome of a proceeding which affects the length of the prisoner's confinement (including the loss of good-time credits) unless that proceeding has been "favorably terminated" in the plaintiff's favor); *Archer v. Fischer*, 325 F. App'x 9 (2d Cir. 2009) (summ. order); *McEachin v. Selsky*, 225 F. App'x 36, 37 (2d Cir. 2007) (summ. order).  Vogelfang's claim for damages based on the loss of good time credits is thus not cognizable.

claim of insufficient notice must be taken as true at this stage, and this claim cannot be dismissed. *Roth*, 489 F.3d at 511.

### (2)    *Removal from the hearing*

As to Vogelfang's second claim, that she was improperly removed from the hearing for "no reason" in violation of 7 N.Y.C.R.R. § 253.6(b), that claim, too, is factually contradicted by the HDS she submitted with her Complaint; it states that defendant Maddox had Vogelfang removed, after several warnings, due to her disruptive behavior.  However, as noted, the plaintiff's contrary factual statement must be taken as true on a motion to dismiss. *Roth*, 489 F.3d at 510–11.  Accordingly, assuming Vogelfang has an independent due process right to be present at the disciplinary hearing, the defendants' motion to dismiss as to that allegation (in which defendants argue only that Vogelfang's removal from the proceeding was factually justified) must be denied.

District courts in this circuit have expressed differing views as to whether an inmate has a due process right to be present at a disciplinary proceeding separate and apart from the well-established rights of inmates to call witnesses and present documentary evidence.  In *Webb v. Selsky*, Judge Skretny of the Western District of New York noted that in *Young v. Hoffman*, 970 F.2d 1154, 1156 (2d Cir. 1992), "the Second Circuit [has] referred to the opportunity [for an inmate] to appear at the hearing and to call witnesses."  2008 U.S. Dist. LEXIS 22989, at *24–25 (W.D.N.Y.).  Similarly, Judge Cote of this District has also noted that "case law does *imply* that [the prisoner plaintiff] had a limited [though not absolute] right to be present at the hearing." *See Mims v. Ufland*, No. 07-cv-1926, 2008 U.S. Dist. LEXIS 58649, at *14 n.6 (S.D.N.Y. Aug. 1, 2008) (emphasis added).

By contrast, in *Bogle v. Cerio*, Judge Siragusa, also of the Western District of New York, squarely held that "an inmate does not have a due process right to be physically present at his disciplinary hearing." 2003 U.S. Dist. LEXIS 18521, at *18–19 (W.D.N.Y. Sept. 9, 2003). In so holding, Judge Siragusa reasoned that the Supreme Court's decision in *Wolff* "does not specifically provide an inmate with a due process right to be physically present at his disciplinary hearing", and that "such a due process right cannot be implied" from either prison regulations or subsequent applications of *Wolff* by the Second Circuit. *Id.* at *18–19, 21. Judge Siragusa also explained that "[p]roviding an inmate a limited right to call witnesses and present evidence in his defense, but not a guarantee to be physically present at his disciplinary hearing, strikes [the proper] balance" between "an inmate's rights and the correctional facility's interests." *Id.* at *21.

As to the Second Circuit's guidance on this point, several cases are instructive, although not conclusive. In *Francis v. Coughlin*, 891 F.2d 43, 48 (2d Cir. 1989), the court reversed the denial of a motion to dismiss a complaint and remanded with instructions to dismiss a prisoner's due process claim that he was not permitted to view the testimony of witnesses at his disciplinary proceeding. In summarizing its holding, the Second Circuit stated that "[p]rison inmates do not possess a constitutional right to be present during the testimony of witnesses during a disciplinary proceeding"—thereby implying that no independent, free-standing right to be present exists. *Francis*, 891 F.2d at 48.

Three years later, in *Young v. Hoffman*, the Second Circuit reversed a grant of summary judgment to a prisoner plaintiff on, *inter alia*, a claim that the plaintiff had been improperly removed from a disciplinary proceeding. In so ruling, the court stated that "the Due Process Clause provides inmates with several protective procedures that they may expect at disciplinary hearings, including the opportunity to appear at the hearing and to call witnesses." *Young*, 970

F.2d at 1156 (citing *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986); *Wolff*, 418 U.S. at

564–66).  The Second Circuit in *Freeman v. Rideout*, in turn, stated that

> An inmate charged with a violation must be given (1) advance written notice of
> the charges at least 24 hours before the hearing; (2) the opportunity to appear at
> the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written
> statement by the factfinders as to the evidence relied on for their decision, and the
> reasons for the prison committee's action.

808 F.2d at 953 (citing *Wolff*, 418 U.S. at 564–66).  Thus, the preponderance of Second Circuit

case law through 1992 would appear to support the proposition that a prisoner has a stand-alone

right to be present at his or her disciplinary hearing.

That said, in more recent pronouncements—post-dating *Freeman*, *Francis*, and *Young*—

the Second Circuit has not mentioned an independent right of a prisoner to be present at a

disciplinary proceeding, separate and apart from the well-established entitlement to call

witnesses and present documentary evidence.  For instance, in *Sira v. Morton*, the Circuit

summarized *Wolff* as requiring only that

> [A]n inmate is entitled to advance written notice of the charges against him; a
> hearing affording him a reasonable opportunity to call witnesses and present
> documentary evidence; a fair and impartial hearing officer; and a written
> statement of the disposition, including the evidence relied upon and the reasons
> for the disciplinary actions taken.

380 F.3d at 69.  Similar descriptions of the *Wolff* protections, all omitting any reference to a

specific right to be present, appear in *Williams v. Menifee*, 331 F. App'x 59, 60 (2d Cir. 2009)

(summ. order); *Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005) (summ. order);

*Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004), and *Kalwasinski v. Morse*, 201 F.3d 103, 109

(2d Cir. 1999).[10]

---

[10] In the unreported 2005 case of *Chavis v. Zodlow*, the Circuit vacated a judgment on the
pleadings dismissing a plaintiff's due process claims arising out of a disciplinary hearing.  In

In sum, this Court finds it to be an open question in the Second Circuit whether there is an independent right of a prisoner to be present at all times during a disciplinary hearing, or whether such a right to be present exists only insofar as it is required to enable the prisoner to exercise his or her rights to call witnesses or present documentary evidence.

Here, Vogelfang does not specifically allege that she was restrained in exercising her right to call witnesses to the disciplinary hearing in her defense, and she does not claim that she was prohibited from presenting documentary evidence to defendant Maddox. Nor does Vogelfang have a right of confrontation or cross-examination which may have been infringed by her removal from the proceeding. *Kalwasinski*, 201 F.3d at 109; *Wolff*, 418 U.S. at 567–68. Instead, she complains only that defendant Maddox ordered her removed from the hearing, in purported violation of 7 N.Y.C.R.R. § 253.6(b), the New York state regulation requiring that a prisoner attend a hearing or affirmatively waive attendance. The defendants, for their part, do not argue that Vogelfang lacked a constitutional right to be present at the hearing. Rather, they contend that any such right is, at most, qualified and subject to the inmate's appropriate behavior at the hearing, and that, as a matter of fact, that her removal for disruptive behavior was justified and hence did not violate due process.

---

arriving at this conclusion, the Court characterized the Supreme Court's decision in *Wolff* as

> [A]cknowledging an inmate's limited right to be present during his disciplinary hearing and noting that "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."

128 F. App'x 800, 805 (2d Cir. 2005) (summ. order) (quoting *Wolff*, 418 U.S. at 564–66). Read in context, however, it is unclear whether the *Chavis* court's reference to an inmate's limited right to be present described an independent right, or merely a right appurtenant to the narrower rights to call witnesses and present documentary evidence.

[34]

In light of the fact that the defendants do not squarely argue that Vogelfang had no right to be at the hearing, and that the law appears to be open on this issue, the Court declines to hold, on a motion to dismiss, that Vogelfang has failed to state a due process claim upon which relief can be granted. Leaving this claim standing is, further, pragmatic, in that the Court has also sustained Vogelfang's due process claim based on insufficient notice that arises out of the same disciplinary proceeding; permitting Vogelfang to pursue her claim based on improper removal from that proceeding will, therefore, impose only a marginal additional discovery burden. Such discovery may permit defendants to show, on a future motion for summary judgment, either that Vogelfang's removal from the proceeding was factually justified or that defendant Maddox is entitled to qualified immunity. Defendants' motion to dismiss this claim is, therefore, denied.

### (3) *Questioning of a witness outside Vogelfang's presence*

Vogelfang's third procedural due process argument is that defendant Maddox impermissibly questioned witnesses outside of her presence. It is well-settled that "it is not a violation of due process at a disciplinary hearing to take the testimony of a witness outside the presence of an inmate." *Kalwasinski*, 201 F.3d 103 at 109 (citing *Francis v. Coughlin*, 891 F.2d 43, 48 (2d Cir. 1989)) (additional citations omitted). "Nor does an inmate have a constitutional right of confrontation." *Kalwasinski*, 201 F.3d at 109 (citing *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993)) (additional citations omitted). Thus, no due process claim can be premised on Maddox's alleged questioning of a witness outside of Vogelfang's presence.

### 12. Specific Instances of Cruel and Unusual Punishment

Vogelfang's penultimate claim alleges that she was subject to cruel and unusual punishment by defendants Tardibono, Shavo, Velez, and Nunez.

a)      **Allegations against defendants Tardibono, Shavo, and Velez**

Vogelfang claims that, at a disciplinary proceeding before defendant Hayo (described *supra* at Section II.B.11(a)), she got up to leave the hearing, without permission and before it was concluded, and that as a result defendant Velez called defendants Tardibono and Shavo, who pushed Vogelfang up against a concrete wall and slammed her down into a chair.  As noted, to establish the subjective element of an Eighth Amendment claim, a plaintiff must show that the defendant "had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Wright*, 554 F.3d at 268 (quoting *Blyden*, 186 F.3d at 262) (internal quotations omitted)).  The wantonness inquiry turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wright*, 554 F.3d at 268 (citing *Hudson*, 503 U.S. at 7).  Here, Vogelfang's own pleading states that she attempted to leave a disciplinary proceeding without permission because, in her opinion, the result was pre-determined.  Her pleading also concedes that the conduct of Velez, Tardibono, and Shavo in restraining her was a direct response to this behavior.  Thus, Vogelfang has failed to plausibly allege that Velez, Tardibono, and Shavo acted "maliciously and sadistically to cause harm"; instead the facts as pled equally if if not more plausibly support the opposite conclusion, that these acts were undertaken "in a good faith effort to maintain or restore discipline." *Wright*, 554 F.3d at 268.  Vogelfang therefore has not made out a plausible Eighth Amendment claim based on this incident.

b)      **Cruel and unusual punishment against defendant Nunez**

Vogelfang also alleges that, at one occasion, while she was on the way back from the prison shower area, defendant Nunez hit her on the back and shoulders, causing her to re-injure a pre-existing back injury.  The only context accompanying this claim, however, is Vogelfang's

allegation that when Nunez allegedly hit her, Nunez was "acting like she was trying to get [Vogelfang] to walk" back to Vogelfang's cell.  This claim, too, is thus devoid of any allegation rendering plausible the assertion that Nunez acted "maliciously and sadistically to cause harm"— a necessary prerequisite to a claim of cruel and unusual punishment under the Eighth Amendment.  *Id.*  Instead, the facts as pled more plausibly support the opposite conclusion, that Nunez applied force only "in a good faith effort to maintain or restore discipline"—*i.e.*, to return Vogelfang to her cell.  *Id.*  Thus, even if Nunez used unnecessary force, by Vogelfang's own account, Nunez's purpose in doing so, to direct Vogelfang back to her cell, is not plausibly consistent with a finding of wantonness, *i.e.*, with malicious or sadistic intent to cause harm. *See, e.g.*, *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) ("An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim") (internal quotation marks omitted); *Chambliss v. Rosini*, No. 09-cv-7221, 2011 U.S. Dist. LEXIS 99447, at *25 (S.D.N.Y. Sept. 2, 2011) (prisoner failed to show sadistic or malicious intent where force was applied for the purpose of transporting prisoner back to his cell and locking him in); *Jones v. Diaz*, No. 09-cv-2625, 2011 U.S. Dist. LEXIS 31238, at *9–12 (S.D.N.Y. Mar. 23, 2011) (prisoner failed to satisfy subjective element of Eighth Amendment claim where force was applied to return plaintiff to his cell and search him for weapons thereafter).  There is no factual allegation in Vogelfang's submissions to support any such finding.  Thus, Vogelfang has not plausibly pled a cruel and unusual punishment claim against Nunez.

### 13.   Retaliation

Vogelfang's twenty-fifth and final claim alleges two incidents of retaliation.  First, she alleges that a number of defendants have issued her false IMRs, that her grievances have gone

unheeded, and that she been physically and verbally abused, all in retaliation for her complaint of sexual assault against another correction officer.  As defendants concede, this is a most "serious allegation."  Defs.' Br. 31.  Second, Vogelfang alleges that defendant Derry filed a false IMR against her in retaliation for her filing a grievance against him for performing a "degrading sexual act" in front of her.  The Court addresses each in turn.

### a)       Retaliation for filing a complaint of sexual assault

First, Vogelfang claims that much of the discipline administered to her while at Bedford Hills has been undertaken in retaliation for her complaint of sexual assault against an unnamed correction officer.  Assuming *arguendo* that these acts, if done for retaliatory purposes, would amount to constitutional violations, Vogelfang has failed to plead sufficient facts to give rise to a colorable inference of retaliation.  "In the prison context, the Second Circuit has recognized the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated."  *Key v. Toussaint*, 660 F. Supp. 2d 518, 525 (S.D.N.Y. 2009) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)) (internal quotation marks omitted); *see also Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).  A district court must, then, "examine prisoners' claims of retaliation with skepticism and particular care."  *Key*, 660 F. Supp. 2d at 525 (citing *Colon*, 58 F.3d at 872).  This exercise results in a functionally "heightened burden of proof" when an incarcerated plaintiff pleads unconstitutional retaliation.  *Key*, 660 F. Supp. 2d at 518 (quoting *Green v. Phillips*, No. 04-cv-10202, 2006 U.S. Dist. LEXIS 14960, at *7 (S.D.N.Y. Mar. 31, 2006); *see also Bryant v. Goord*, No. 99-cv-9442, 2002 U.S. Dist. LEXIS 6496, at *4–5 (S.D.N.Y. Apr. 12, 2002).  Conclusory allegations will not suffice; instead, "a prisoner's claim for retaliation must be supported by specific and detailed factual allegations."  *Friedl v. City of New York*, 210 F.3d 79, 85–86 (2d

Cir. 2000) (quoting *Flaherty*, 713 F.2d at 13); *see also Thomas v. Goord*, 215 F. App'x 51, 53 (2d Cir. 2007) (summ. order).

Here, although Vogelfang repeatedly asserts that her perceived mistreatment is a result of retaliatory animus on the part of the defendants, she has not offered any "specific and detailed factual allegations" to support that assertion. *Friedl*, 210 F.3d at 85–86. The customary indicators which could give rise to an inference of retaliation—a relationship between the accused correction officer and the defendants, temporal proximity between Vogelfang's complaint and the allegedly-retaliatory actions, or telling comments by the defendants—are not found in Vogelfang's submission. Indeed, the time at which the sexual assault charge was made is not noted, nor is the identity, location, or role of the correction officer involved. Instead, Vogelfang simply reiterates the same, unadorned assertion again and again.

The Court does not take lightly allegations that a prisoner was retaliated against for standing up for herself against sexual assault perpetrated by a correction officer. Nevertheless, in this case, after a careful review of the plaintiff's submissions, the Court concludes that she simply has not alleged facts sufficient to support a colorable inference of retaliation, given the heightened scrutiny applicable in the prison context, and therefore make a claim that she was retaliated against "plausible on its face." *Twombly*, 550 U.S. at 570. Accordingly, Vogelfang's claim of retaliation must be dismissed. *Cf. Andino v. Fischer*, 698 F. Supp. 2d 362, 385 (S.D.N.Y. 2010) ("A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone.") (citing *Flaherty*, 713 F.2d at 13).

### b)    Retaliation by defendant Derry

Vogelfang also argues that defendant Derry filed a false IMR against her in retaliation for her filing a grievance regarding the "degrading sexual act" he allegedly performed in front of

her.  In order to survive a motion to dismiss a complaint, "a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations . . . (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).  "The filing of prison grievances is a constitutionally protected activity." *Davis*, 320 F.3d at 353.  It is, further, well-settled that "[a]n allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002); *see also Edwards v. Horn*, No. 10-cv-6194, 2012 U.S. Dist. LEXIS 18424, at *56 (S.D.N.Y. Feb. 14, 2012).

In contrast to her conclusory allegations of retaliation, here, Vogelfang has sufficiently pled a violation of her rights under § 1983.  Vogelfang alleges that on February 2, 2010, she filed a grievance against Derry for the "degrading sexual act," and that three days later, on February 5, 2010, Derry wrote a false IMR which led to her spending three months in the SHU.  The temporal proximity of these two events, as well as the common identity between the subject of Vogelfang's grievance and the author of the IMR, plausibly suggest that there was a "causal connection between the protected speech and the adverse action." *Davis*, 320 F.3d at 352. Defendants' motion to dismiss this claim is, therefore, denied.

**CONCLUSION**

For the foregoing reasons, defendants' motion to motion to dismiss is granted as to all but three of Vogelfang's claims. The first surviving claim is Vogelfang's assertion that she was deprived of due process because she did not receive sufficient notice of the disciplinary hearing before defendant Maddox; the second is the claim that she was deprived of due process because she was removed from that disciplinary hearing by defendant Maddox; the third is her claim that defendant Derry retaliated against her for filing a grievance against him.

The Clerk of Court is directed to terminate the motion at docket number 58. The defendants are directed to confer with Vogelfang and to submit a letter, no later than March 30, 2012, setting forth with particularity a contemplated schedule for discovery in this case, and stating whether the parties would jointly consent to the assignment of this case to a United States Magistrate Judge for all purposes. If all parties do not consent, the letter should not identify which of the parties has withheld consent.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: March 13, 2012
New York, New York

[41]